PLAYBOY ENTERPRISES, INC., et al., Plaintiffs,

v.

Edwin MEESE III, et al., Defendants.

PENTHOUSE INTERNATIONAL, LTD., Plaintiff,

v.

Edwin MEESE III, et al., Defendants.

PLAYGIRL, INC., Plaintiff,

v.

Edwin MEESE III, et al., Defendants.

Civ.A. Nos. 86–1346 JGP, 86–1515 JGP and 86–1668 JGP.

United States District Court, District of Columbia.

July 31, 1990.

Bruce J. Ennis, Washington, D.C., for Playboy.

Richard Ben–Veniste, Washington, D.C., for Penthouse.

Jerry David Anker, Washington, D.C., for Playgirl.

Elizabeth Ann Pugh, David Jay Anderson, Dept. of Justice, Washington, D.C., for Edwin Meese III, et al.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

These actions, which are consolidated for the purpose of the pending motions, are now before the Court on the motions for summary judgment filed by the defendants. After giving careful consideration to the motions and the opposition thereto, the Court concludes that the motions should be granted and the cases dismissed with prejudice. *See* Order filed May 29, 1990.

I

The plaintiffs filed these actions in an effort to have the Court permanently enjoin the defendants, who at the time of filing were members of the Attorney General's Commission on Pornography (Commission), from publicly disseminating a "blacklist" or from taking other action for the purpose of censoring and suppressing the distribution of the magazines published by the plaintiffs. The plaintiffs also seek money damages against the members of the Commission as well as then Attorney General Edwin Meese III, the Public Printer and the Superintendent of Documents.

The background of this litigation and the contentions of the plaintiffs are fully set forth in this Court's Memorandum, in which it granted a preliminary injunction, and will not be restated here. *See Playboy Enterprises, Inc. v. Meese*, 639 F.Supp. 581 (D.D.C.1986). Briefly stated, the Commission held a series of six public hearings in various cities across the country and heard from approximately 200 witnesses. One witness the Commission heard from was a Reverend Donald Wildmon, who was then the Executive Director of the National Federation of Decency. He testified that certain corporations were engaged in the sale of pornography which, in his view, included certain magazines published by the plaintiffs. He also submitted a written statement setting forth his views. *See* Playboy Motion for Preliminary Injunction Exhibit C. At a public meeting held in January 1986, the Commission discussed whether Wildmon's allegations should be included in the final report of the Commission. Some of the members expressed the view that before addressing the question of whether Wildmon's testimony should be included in the report, the corporations named by Wildmon should be given an opportunity to respond. Defendants' Motion for Summary Judgment, Appendix (Appendix) 2B. Eventually, it was decided to send a letter, hereinafter sometimes referred to as the "February letter," to each of those corporations. The letters sent were signed by the Chairman of the Commission and stated:

Authorized Representative:

The Attorney General's Commission on Pornography has held six hearings across the United States during the past seven months on issues related to pornography. During the hearing in Los Angeles, in October 1985, the Commission received testimony alleging that your company is involved in the sale or distribution of pornography. The Commission has determined that it would be appropriate to allow your company an opportunity to respond to the allegations prior to drafting its final report section on identified distributors.

You will find a copy of the relevant testimony enclosed herewith. Please review the allegations and advise the Commission on or before March 3, 1986, if you disagree with the statements enclosed. Failure to respond will necessarily be accepted as an indication of no objections.

Please call Ms. Genny McSweeney, Attorney, at (202) 724–7837 if you have any questions.

Thank you for your assistance.

Truly yours

s/ Alan E. Sears

Alan E. Sears

Executive Director

enc: Self Addressed

Postage Paid Mailing Label

Appendix 2C.

The Court, drawing on the decision in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), granted the motion for a preliminary in-

junction and directed the Commission to send a second letter to each addressee of the above letter to advise them that the letter had been withdrawn and that a reply to the letter was not required. In addition, the letter was to advise the corporations that their names would not be included in a final report. The Court did not enjoin the publication of the final report and shortly thereafter, the Commission published a final report without naming any of the corporations and without any reference to the controversy between the parties. *See* Attorney General's Commission on Pornography, Final Report, July 1986.

The case now comes before the Court on the defendants' motions for summary judgment. First, the defendants contend that the request for permanent injunctive relief and for declaratory judgment is moot and further, that the plaintiffs have failed to state a claim for permanent equitable relief. Defendants also contend that the granting of a permanent injunction would violate the First Amendment rights of the defendants. Finally, in this connection, the defendants request that the preliminary injunction previously issued by the Court should be vacated. Second, the defendants argue that former Attorney General Meese, the Public Printer, and the Superintendent of Documents were improperly named as parties to this action. Third, the defendants contend that the claims for damages against the defendant Commission members should be dismissed because the members of the Commission were private citizens, not government employees. In the alternative, the defendants contend that they are immune from liability because the law was not clearly established. Finally, the defendants argue that special factors militate in favor of granting them immunity.

The plaintiffs oppose the motions for summary judgment. First they contend that the defendants have violated clearly established federal law in that they have violated the First Amendment by taking informal action to suppress constitutionally protected speech. Plaintiffs also contend, in this regard, that the case presents factual issues and that the plaintiffs need discovery to obtain further evidence of defendants' "unconstitutional motives" and to demonstrate that the defendants knew that they were violating and intended to violate plaintiffs' rights. Second, the plaintiffs argue that the defendants are not entitled to summary judgment on plaintiffs' claims for further equitable relief. They state, for example, that there is a genuine issue of material fact as to whether the "injurious effects of the February 1986 letter have been completely and irrevocably eradicated." Third, the plaintiffs argue that the motions should be denied in view of pending discovery and that there are genuine issues of material fact as to whether defendants' conduct requires further equitable relief. Finally, the plaintiffs contend that the defendants are not entitled to invoke the doctrine of qualified immunity.

II

At the request of President Reagan, the then Attorney General William French Smith chartered the Commission on March 29, 1985, pursuant to the Federal Advisory Committee Act (FACA), 5 U.S.C. App. II. The FACA provides in part:

Unless otherwise specifically provided by statute or Presidential directive, advisory committees shall be utilized solely for advisory functions. Determinations of action to be taken and policy to be expressed with respect to matters upon which an advisory committee reports or makes recommendations shall be made solely by the President or an officer of the Federal Government.

5 U.S.C. App. II § 9(b).

The Charter of the Commission provided the objectives and scope of the activity of the Committee as follows:

The objectives of the Commission are to determine the nature, extent, and impact on society of pornography in the United States, and to make specific recommendations to the Attorney General concerning more effective ways in which the spread of pornography could be contained, consistent with constitutional guarantees.

The scope of the Commission includes: a study of the dimensions of the problem of pornography, particularly visual and graphic pornography, including changes over the last several years in the nature of pornography, its volume, the impact of new technology, and pornography that relates to children; an examination of the means of production and distribution of pornographic materials, specifically including the role of organized crime in the pornography business; a review of the available empirical and scientific evidence on the relationship between exposure to pornographic materials and antisocial behavior, and on the impact of the creation and dissemination of both adult and child pornography upon children, including, as appropriate, the commissioning of new research on these subjects; a review of national, State, and local efforts, whether by the government or others, to curb pornography; and the exploration and, where appropriate, the recommendation of possible roles and initiatives that the Department of Justice and agencies of local, State and Federal government could pursue in controlling, consistent with constitutional guarantees, the production and distribution of pornography.

Appendix 2 A (Charter of the Commission, par. 2). It is from this point that the Court must consider the claims made by the plaintiffs and the defendants' motions.

■ First, the Court must agree with the defendants that the claim for injunctive relief is now moot, and has actually been moot since July 1986. Plaintiffs were understandably concerned that the February letter might amount to censorship and a prior administrative restraint in violation of the plaintiffs' First Amendment rights. The crucial part of the February letter referred to "testimony" alleging that the addressee corporation was "involved in the sale or distribution of pornography." The Commission then went on to state that, "it would be appropriate to allow your company an opportunity to respond to the allegations prior to drafting its final report section on "identified distributors." The Commission then stated: "Failure to respond

will necessarily be accepted as an indication of no objection." Presumably, the "no objection" referred to no objection to the corporation being "identified" as a distributor of pornography. *See* Appendix 2C. It must be borne in mind that the corporations receiving the letters included a number of drug store chains and convenience store chains which greatly prize their family business. There is no question but that the suggestion that such organizations might be distributors of pornography was sensitive. Moreover, the testimony referred to in the February letter was apparently the testimony of one person, the Reverend Wildmon. Thus, the corporations were placed in a position of having to respond to an inquiry from the Commission or run the risk of having themselves identified with pornography. It is obvious that the matter was handled very poorly by the Commission, especially since the inquiry apparently represented the viewpoint of only one individual out of the approximately two hundred witnesses who were interviewed.

It was for the above reason that the Court granted, in part, the plaintiffs' motion for a preliminary injunction. The Court directed the defendants to withdraw the February letter and to advise the recipients of those letters that they were not required to respond and that the corporations would not be named as distributors of pornography in the final report of the Commission. The Commission immediately complied with the Court's Order. A few days thereafter, the Commission's Final Report was published and there was no mention of a "blacklist" of corporations.

The above facts make clear that the plaintiffs' request for injunctive relief and for declaratory relief is moot. It is unnecessary for the Court to go further to enter a permanent injunction because the Commission, which has gone out of existence pursuant to the terms of its charter, can no longer issue additional letters, and in fact, before going out of existence, the Commission published its *final* report.

Any suggestion that a permanent injunction should be entered notwithstanding the fact that the Commission has gone out of

existence must also be rejected. Simply stated, the controversy here, as it relates to *this* Commission, is not capable of repetition. The statement of the Supreme Court that "DeFunis will never again be required to run the gantlet (sic) of the Law School's admission process," applies with equal force here. *See DeFunis v. Odegaard,* 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974). The Commission can never again issue a report since it no longer exists. The rule that a claim does not become moot where it is capable of repetition, yet evades review does not apply to the facts of this case. "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983) (citing to *De-Funis*). The plaintiffs can meet no such test in this case, thus the requests for injunctive relief and for a declaratory judgment must be denied.

■ Second, the Court is in agreement with the defendants when they argue that the Attorney General, the Public Printer and the Superintendent of the Documents of the Government Printing Office should not have been named as defendants in this action. Plaintiffs failed to allege facts that require that those defendants remain in the case. They will be dismissed.

■ Finally, the defendants argue that they are also entitled to summary judgment against the plaintiffs on the damage claims asserted against them. The defendant Commission members contend that they are private citizens appointed to a Commission and are not government employees. Thus, they argue for that reason alone they are not subject to damages. Alternatively they argue that they are immune because the law was not clearly established. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Last, they argue that in any event, special factors militate in favor of granting them immunity in this case. The Court concludes that it need not address the de-fendants' claim that they are private citizens, because, even assuming that they are government employees, they are entitled to qualified immunity.

The plaintiffs argue that they are entitled to pursue a claim for damages against the defendants under *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The defendants contend that they are entitled to qualified immunity.

As the Supreme Court has held, "[t]he resolution of immunity questions inherently requires a balance between the evils inevitable in any available alternative. In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow,* 457 U.S. at 813–14, 102 S.Ct. at 2736. Thus, most public officers have been denied absolute immunity. 457 U.S. at 814, 102 S.Ct. at 2736. "At the same time, however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.* (footnotes omitted). The Supreme Court also noted that: "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official" and that "[d]ecisions of [the Supreme Court] have established that the 'good faith' defense has both an 'objective' and 'subjective' aspect. The objective element involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights'" and "[t]he subjective component refers to 'permissible intentions'." *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736–37 (citations and footnotes omitted). The Supreme Court went on to note that the subjective element of the "good faith" defense has proved incompatible with the admonition that insubstantial claims should not proceed to trial, but on the other hand, motions for summary judgment filed pursuant to Fed.R.Civ.P. 56 cannot be a means

for resolving questions of fact. 457 U.S. at 815–16, 102 S.Ct. at 2737. The Supreme Court observed that "the judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions." 457 U.S. at 816, 102 S.Ct. at 2737. This is the subjective intent, however, and "[j]udicial inquiry into subjective motivation therefore may entail broadranging discovery and the deposing of numerous persons, including an official's professional colleagues" and such "[i]nquiries of this kind can be peculiarly disruptive of effective government." 457 U.S. at 817, 102 S.Ct. at 2737–38 (footnotes omitted). The high court then ruled that: "We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738 (citations and footnote omitted).

The test of "clearly established law" is not to be applied with a high degree of generality—for example whether the right of due process is clearly established under the Due Process Clause, for if so applied, "it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The question in *Anderson* revolved around an action against a federal law enforcement officer who participated in a search that violated the Fourth Amendment. In addressing the issue, the Supreme Court stated:

It follows from what we have said that the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials. But contrary to Creighton's [plaintiff's] assertion, this does not reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that *Harlow* sought to minimize ... The relevant question in this case, for example, is the objective (albeit fact specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. *Anderson's subjective beliefs about the search are irrelevant.*

107 S.Ct. at 3040.

In the view of this Court, the decisions in *Harlow* and *Anderson* lead to the conclusion that discovery in this case is unwarranted and unnecessary. This case represents a prime example of what the Supreme Court was trying to avoid when it limited a court's consideration to the objective rather than the subjective. The Commission involved in this case was a Commission of citizens created pursuant to the FACA. To allow the plaintiffs to pursue discovery and an action for damages, would most likely deter "able citizens from acceptance" of such assignments in the future. The Commission members served without pay. Such citizens must be able to call it as they see it, else they will be of little or no benefit to the government. While it is true that this Court concluded in granting injunctive relief that the Commission members exercised poor judgment in sending out the February letter, their actions in doing so are similar to the actions of federal agent Anderson who participated in a search in violation of the Fourth Amendment. Of course, there is a clearly established First Amendment right enjoyed by these plaintiffs, but the question is whether the defendants, by their action, based on the facts and information before them, violated a clearly established right. The Court concludes that they did not.

First, the Commission was given a fairly broad mandate to investigate the impact of pornography on society. And that investigation was to include changes in the nature of pornography, its volume, how it relates to children, *an examination of the means of production and distribution of pornography,* the impact of its distribution on adults and children and a review of efforts by governments to curb pornography. The Commission held hearings in six cities and

when it received testimony concerning the distribution of pornography by certain corporations it had several choices. The Commission could have merely referred to that testimony in its reports, either naming or not naming the corporations; it could have ignored the testimony; or it could have elected to advise the corporations of the nature of the allegations and allow the corporations to respond. To have exercised the first choice would have been unfair, and to have exercised the second choice would not have been living up to the Commission's mandate. Clearly, it seems that the best choice was to give the corporations a chance to respond. As the Court noted above, the fault was in the method of seeking additional information and the phrasing of the February letter in a manner which suggests that absence of a response might mean that the corporations' names would be included in the report. However, while the defendants may have made a mistake, that mistake is no cause to subject them to damages.

When this Court heard the motion for a preliminary injunction, it relied in part on the decision in *Bantam Books, Inc. v. Sullivan, supra.* While the facts in *Bantam* are similar to those in the instant case, *Bantam* can be distinguished from this case based on several crucial facts. For example, while this case involves a commission established to investigate and make recommendations, the commission in *Bantam* was designed to encourage morality in youth. While the Commission in this case sent the February letter to the corporations to obtain a response, if any, concerning allegations made against the corporations by a person testifying before the Commission, the Commission in *Bantam* advised distributors of magazines and other reading material that certain magazines or books had been found "objectionable." Moreover, the *Bantam* Commission followed up such notifications with visits by police officers, effectively enforcing the decision of the Commission.

Although on the face both cases appear to be similar, closer examination of the facts in this case reveal that there are important differences. The Court concludes that *Bantam* is not a basis for determining that the defendants in this case violated clearly established law.

Finally, there are factors which also cause this Court to hesitate in finding potential liability on behalf of these defendants. *See Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). It is the same hesitation which resulted in the Court not granting the complete injunctive relief requested by the plaintiffs. First, as noted above, the instant case involves a citizens' commission, charged with the responsibility of investigating pornography. To allow damages against such citizens would be to discourage citizen participation in the future. This is especially so in the litigious society that is the modern day United States. Moreover, a decision allowing damages would no doubt chill inquiry of this nature—thus depriving other citizens of their First Amendment rights to speak out and be heard on such sensitive subjects.

The Court is satisfied that the defendants are entitled to qualified immunity and the latter factors support that decision. The Court concludes that the defendants' motions for summary judgment should be granted and these cases should be dismissed with prejudice. While the Court has not addressed every issue raised by the parties, it finds that the issues addressed are dispositive.

An appropriate order has been filed.